FARMER, J.,
concurring.
While I concur in the affirmance, I find it necessary to comment about this issue of standing. In my judgment, standing in an in rem action (such as adoption) is not quite the same thing as it is in an in personam proceeding where the party seeking to intervene must line up on one side or the other. In this kind of in rem case, there might not be clearly defined “sides” because there may be no true adversary to the principal issue to be decided as regards the res. In the case in point, although the siblings may not be heard to *757 object to the adoption itself, they do present an entirely separate question as to whether they can be heard to have the court consider continued communication and contact with their sibling after the adoption becomes final.
It is clear that a final order of adoption severs all legal relationships between the adopted child and her blood relatives. See § 63.172(l)(b), Fla. Stat. (1999). On the other hand, section 63.0427 also provides that:
“A child ... who is the subject of a petition for adoption under this chapter, shall have the right to have the court consider the appropriateness of posta-doption communication or contact, including, but not limited to, visits, letters and cards, or telephone calls, with his or her siblings who are not included in the petition for adoption.”
§ 63.0427(1), Fla. Stat. (1999). Although this statute points from the perspective of the adopted child, that is undoubtedly a function of the fact that the child to be adopted is the focus of both the statute and the adoption proceeding. It is the child to be adopted over whom the court has direct jurisdiction, not the siblings of the child.
I note that while the statute creates this interest of continuing contact among siblings, the adoption laws do not identify siblings as being entitled to notice of the adoption. See § 63.122(4), Fla. Stat. (1999) (notice of hearing on adoption shall be given to DCFS or licensed child-placing agency, an intermediary, a person whose consent to the adoption is required unless excused by court, and any person withdrawing consent). Nor is the consent of siblings required for the adoption itself. See § 63.062(1), Fla. Stat. (1999) (unless excused consent required by mother, father and child if over age of 12).
Still the legislature has said that it intends in its adoption laws “whenever possible, to maintain sibling groups.” [emphasis supplied] § 63.022(1), Fla. Stat. (1999) (“It is the intent of the Legislature to protect and promote the well-being of persons being adopted and their birth and adoptive parents and to provide to all children who can benefit by it a permanent family life, and, whenever possible, to maintain sibling groups.”). Even though these children of drug addicted parents had little or no experience as a conventional family, by itself that hardly means that they should have no right to have the adoption court consider whether future contacts among the siblings would be in their best interests. Indeed, the statute does not speak of continuing contacts but only “postadoption communication or contact.” If the statute’s contacts are only those after adoption, it hardly seems relevant whether there were contacts before adoption. Hence, iodising only on the statutory text, I would deem irrelevant whether the children had any history of communicating or contact, at least as regards the distinct question whether the siblings themselves can raise the issue of future contacts.
I think that section 63.0427 carries over a corresponding interest of the adopted child’s siblings to have the court consider future contacts after the adoption is final. I begin with the understanding that the adopted child clearly has this statutory right to have the court consider post adoption contact between the siblings. The right in question is an associational right— i.e., an interest in having some future connection with the adoptee’s siblings. An association is a linkage of some kind between two or more people. An associational right is necessarily reciprocal: A has the right to associate in some way with B; it corresponds with a right of B to associate with A. If B has no right to associate with A, A’s associational right is meaningless as regards B. One is useless without the other.
Thus, I construe section 63.0427 to create an associational interest among biological siblings, at least to the extent of having the court presiding over the adoption of one of them to consider the subject of *758 continued contact among them even after the adoption has theoretically cut off all other legal rights they had as brothers and sisters. To me it does not seem to matter that the sibling being adopted has not thought to raise the question of such future contacts. In many instances, it will be entirely understandable that the adopted child does not raise it at all, because of the child’s infancy or the disinclination of foster or adopting parents to do so. That capacity and disinclination hardly yield a conclusion that the siblings therefore lack standing to raise it themselves. The legislative goal here is, as the text indicates, to keep sibling groups acquainted to the extent that the best interests of one or more of them would suggest.
For these same reasons, I would not follow Florida Dep’t of Health & Rehabilitative Services v. Doe, 659 So.2d 697 (Fla. 1st DCA 1995), rev. denied, 668 So.2d 602 (Fla.1996). In that case, adoptive parents sought to intervene in. the adoption proceedings concerning the half-sibling of their adopted child. The trial court allowed them to intervene, but on review the First District reversed, saying:
“We reject [the adoptive parents] interpretation of [section 63.022(1) ] as conferring legal status on them for several reasons. Under the facts of this case, where the children have never lived together, there is no sibling relationship to maintain. The legislative statement contained in section 63.022(1) is a general statement of legislative intent to guide HRS and does not provide a basis for legal standing.”
659 So.2d at 699.
The rationale of the Doe court just has to be wrong. If the child to be adopted were newly born and immediately placed with the adoptive parents-to-be, there obviously could not be any history of living together with biological siblings “to provide a basis for legal standing.” In truth, the statute looks not to the past contacts, if any, among the biological siblings but instead to the future possibility of such contacts. And while it is true that section 63.022 is merely a statement of legislative intent and does not purport in so many words to “provide a basis for legal standing,” that same construction cannot be said of section 63.0427, which does provide such a basis.
The Doe court has not explained how an adoption judge could try to maintain sibling groups if the siblings cannot be heard and the adoptive child is herself incapable of raising the issue. The construction I suggest does enable the judge to comply with this clear legislative goal. Recognizing standing in the siblings themselves at least to raise the issue creates a possibility — otherwise lacking — of “maintaining] sibling groups,” as the statute says. See § 63.022(1) (“It is the intent of the Legislature ... whenever possible, to maintain sibling groups.”) [emphasis supplied] The recognition of sibling standing is thus more faithful to both the statutory text and the legislative purpose than is Doe’s wooden rejection of it.
For these reasons, I agree that the denial of relief from the adoption judgment under rule 1.540(b) is without prejudice to the siblings to petition the adoption court as to the limited subject of possible future contacts, recognizing of course that whether such contacts are in the best interests of the child being adopted is for the trial court to decide in the first instance.